UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SERVANDO ALONSO FLORES,<br><br>             Petitioner,<br><br>   v.<br><br>ICE FIELD OFFICE DIRECTOR,<br><br>             Respondent. | Case No. C20-0538-MJP-MAT<br><br>REPORT AND RECOMMENDATION |

I. INTRODUCTION

Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action *pro se* to obtain release from detention or a bond hearing. (Dkt. 6.) Currently before the Court is the Government's motion to dismiss. (Dkt. 10.) Petitioner filed supplemental information that the Court construes as an opposition to the Government's motion to dismiss. (Dkts. 13-14.) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be GRANTED, Petitioner's habeas petition be DENIED, and this action be DISMISSED with prejudice.

II. BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States as a lawful permanent resident in November 2001. (Dkt. 10-2 (Berg Decl.) ¶ 4.) In 2011, Petitioner was convicted in Washington State court of violating a no contact order. (Dkt. 10-4 at 12.) Later that year, he was charged with possession of cocaine with intent to deliver. (*Id.*) Ultimately, in order to avoid the immigration consequences of a drug conviction, he was allowed to plead guilty to crimes he asserts he did not commit, namely assault in the third degree, malicious mischief in the second degree, and property damage. (*Id.* at 12-14.) In 2014, however, Petitioner was convicted of drug-related crimes, specifically Possession with Intent to Manufacture/Deliver Methamphetamine and Manufacture of Marijuana under Washington State law, and sentenced to 64 months imprisonment. (Dkt. 10-2 ¶ 6.) On March 5, 2014, ICE issued and served on Petitioner a Notice to Appear ("NTA"), charging him as removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) (aggravated felony), and 1227(a)(2)(B)(i) (controlled substance conviction). (*Id.* ¶ 7.)

On December 28, 2016, ICE took Petitioner into custody and transferred him to the NWIPC. (*Id.* ¶ 8.) On January 31, 2017, Petitioner had a bond hearing before an immigration judge ("IJ"). (*Id.* ¶ 9.) The IJ denied bond based on a finding that Petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c). (*Id.*) The IJ subsequently denied Petitioner's motion for reconsideration. (*Id.* ¶ 11.)

On March 8, 2017, Petitioner appeared at a master calendar hearing where he admitted the allegations in the NTA concerning his citizenship and lawful permanent residency but denied the allegations regarding his criminal convictions and the charges of removability in the NTA. (*Id.* ¶ 10.) On April 13, 2017, Petitioner appeared at another master calendar hearing at which he waived asylum-related applications, and the IJ ordered him removed from the United States to Mexico.

(*Id.* ¶ 12.) The Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal on July 31, 2017. (*Id.* ¶¶ 14, 18.) Petitioner then filed a petition for review with the Ninth Circuit. (*Id.* ¶ 20.)

On July 31, 2017, Petitioner had a bond hearing pursuant to *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 138 S.Ct. 830 (2018) (ordering bond hearings every six months for § 1226(c) detainees at which the government bears the burden of justifying continued detention by clear and convincing evidence). (*Id.* ¶ 17.) The IJ denied bond, finding that the U.S. Department of Homeland Security ("DHS") established by clear and convincing evidence that Petitioner presented a danger to the community and a flight risk. (*Id.*) On February 21, 2018, Petitioner had a second *Rodriguez* bond hearing. (*Id.* ¶ 25.) The IJ again found that DHS had met its burden to justify Petitioner's continued detention and denied bond. (*Id.* ¶ 25.) According to Petitioner, he was housed at the Northern Oregon Regional Correctional Facility ("NORCOR") during both *Rodriguez* bond hearings. (Dkt. 14 at 7.)

On June 18, 2018, the Ninth Circuit granted DHS's unopposed motion to remand Petitioner's petition for review to the BIA, which in turn remanded to the IJ. (*Id.* ¶¶ 26-27.) On April 26, 2019, the IJ held a master calendar hearing and concluded that, due to a change in Washington law, Petitioner's conviction related to methamphetamine was no longer considered an aggravated felony, which rendered him eligible for cancellation of removal. (*Id.* ¶ 28.) Petitioner subsequently filed an application for such relief. (*Id.* ¶ 29.) On September 16, 2019, the IJ held a hearing on Petitioner's application for cancellation of removal, denied relief, and ordered him removed to Mexico. (*Id.* ¶ 31; Dkt. 10-4 at 7-19 (IJ Order).) On February 24, 2020, the BIA dismissed Petitioner's appeal. (Dkt. 10-2 ¶ 33; Dkt. 10-4 at 3-6 (BIA Order).) Petitioner then filed a petition for review in the Ninth Circuit, which entered a temporary stay of removal. *Flores v. Barr*, No. 20-70788, Dkt. 1 (9th Cir. Mar. 20, 2020). The petition for review remains pending.

On May 11, 2020, an IJ denied Petitioner's motion requesting a new bond hearing because he did not present any change in circumstances. (Dkt. 13 at 9.)

### III.   DISCUSSION

Petitioner seeks release from immigration detention or a bond hearing. The Government argues he is not entitled to either form of relief. As discussed below, the Court concludes that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) and that his continued detention comports with due process.

A.   Petitioner's Detention is Mandated by 8 U.S.C. § 1226(c)

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of noncitizens who are present in the United States and have been placed in removal proceedings.[1] *Jennings v. Rodriguez*, 138 S.Ct. 830, 846 (2018). Section 1226(a) authorizes DHS to arrest and either detain or release on bond noncitizens "pending removal proceedings," except as provided in § 1226(c). *Id*. Section 1226(c) states that DHS "'shall take into custody any [noncitizen]' who falls into one of the enumerated categories involving criminal offenses and terrorist activities." *Id.* (quoting § 1226(c)(1)). DHS "may release" such a noncitizen "*only if*" DHS decides that doing so is necessary for witness-protection purposes and the noncitizen will not pose a danger or flight risk. *Id.* (quoting § 1226(c)(2), emphasis in *Jennings*).

The IJ found that Petitioner was detained pursuant to § 1226(c), and Petitioner did not seek review of this decision by the BIA. Petitioner now argues that he is not detained under § 1226(c) because, due to a change is Washington law, he is not considered an aggravated felon. (Dkt. 14 at

---

[1] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 4

1  5.) Section 1226(c)(1)(B), however, provides for mandatory detention of noncitizens who are
2  deportable under § 1227(a)(2)(B), which applies to Petitioner. (*See* Dkt. 10-2 ¶ 7 (NTA charged
3  Petitioner as removable under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i)).) Petitioner thus
4  falls within the plain language of the statute.

5  Petitioner also argues that pursuant to *Casas-Castrillon v. Department of Homeland*
6  *Security*, 535 F.3d 942 (9th Cir. 2008), the statutory authority for his detention shifted from §
7  1226(c) to § 1226(a) when he filed his petition for review with the Ninth Circuit and obtained a
8  stay of removal. (*See* Dkt. 6 at 3-5; Dkt. 13 at 1.) Petitioner is correct that under *Casas-Castrillon*,
9  his detention is governed by § 1226(a). The Government argues, however, that the Supreme
10 Court's decision in *Jennings* abrogated *Casas-Castrillon*'s relevant holding. (Dkt. 10 at 9-11.) As
11 discussed below, the Court agrees with the Government.

12 *Casas-Castrillon* remains binding circuit authority unless it is "clearly irreconcilable" with
13 higher authority. *See In re Amy*, 714 F.3d 1165, 1167 (9th Cir. 2013). The "clearly irreconcilable"
14 requirement is a "high standard." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (quoted
15 source omitted). "[I]t is not enough for there to be 'some tension' between the intervening higher
16 authority and prior circuit precedent . . . ." *Id.* (quoted source omitted). So long as the court "can
17 apply . . . prior circuit precedent without running afoul of the intervening authority," it must do so.
18 *Id.* (internal quotation marks omitted).

19 The handful of judges who have considered this issue have reached different conclusions.
20 *Compare, e.g.*, *Djelassi v. ICE Field Office Director*, 434 F.Supp.3d 917, 927-28 (W.D. Wash.
21 2020) (Martinez, C.J., adopting R. & R. of Peterson, M.J., concluding that *Casas-Castrillon* is
22 clearly irreconcilable with *Jennings*); *Muhamd v. ICE Field Office Director*, No. 20-605-RAJ, Dkt.
23 8 (W.D. Wash. Sept. 14, 2020) (R. & R. of Peterson, M.J., same); *with Avilez v. Barr*, No. 19-

REPORT AND RECOMMENDATION - 5

8296, 2020 WL 1704456, at *2-3 (N.D. Cal. Apr. 8, 2020), *appeal pending*, No. 20-16142 (9th Cir.) (concluding that *Jennings* and *Casas-Castrillon* are not clearly irreconcilable); *Birru v. Barr*, No. 20-1285, 2020 WL 1905581, at *7-8 (N.D. Cal. Apr. 17, 2020) (same); *Singh v. Barr*, No 20-2346, 2020 WL 1929366, at *6-7 (N.D. Cal. Apr. 20, 2020) (same). Having carefully considered the issue, the Court concurs with the judges in this District that the relevant holding in *Casas-Castrillon* is clearly irreconcilable with *Jennings*.

*Casas-Castrillon* involved a legal permanent resident who had been detained for seven years without an opportunity to contest his detention before an IJ. 535 F.3d at 944. At the time he filed his habeas petition, his administrative proceedings had concluded, and he was awaiting the Ninth Circuit's decision on his petition for review. *Id.* at 945. The petitioner was initially subject to mandatory detention under § 1226(c), but both parties agreed that at some point that section no longer governed his detention. *Id.* at 946. The Ninth Circuit held that § 1226(c) could not mandate the petitioner's seven-year detention because this provision applies to "expedited removal of criminal [noncitizens]," *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005), and was intended only to govern "detention of deportable criminal [noncitizens] *pending their removal proceedings*," which generally lasts only a few months, *Demore v. Kim*, 538 U.S. 510, 527-28 (2003). *Casas-Castrillon*, 535 F.3d at 947-48 (emphasis in *Demore*). The Ninth Circuit also cited regulations stating that § 1226(c) applies "during removal proceedings," 8 C.F.R. § 236.1(c)(1)(i), and that the "conclusion of proceedings" occurs upon the BIA's dismissal of the noncitizen's appeal, 8 C.F.R. § 1241.1(a). *Casas-Castrillon*, 535 F.3d at 948; *see also id.* ("the mandatory, bureaucratic detention of [noncitizens] under § 1226(c) was intended to apply for only a limited time and ended in this case when the BIA affirmed Casas' order of removal . . .").

Having concluded that § 1226(c) did not authorize the petitioner's prolonged detention, the Ninth Circuit held that he was detained under § 1226(a), which authorizes detention "pending a decision on whether the [noncitizen] is to be removed from the United States." *Casas-Castrillon*, 535 F.3d at 948 (quoting § 1226(a)). The Ninth Circuit explained that "[i]t is reasonable to consider the judicial review of a removal order as part of the process of making an ultimate 'decision' as to whether [a noncitizen] 'is to be removed.'" *Id.* (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (quoting § 1226(a))). Thus, the petitioner was detained under § 1226(a) while his petition for review remained pending. *Id.*

In *Jennings*, the Supreme Court reversed the Ninth Circuit's decision in *Rodriguez III*, 804 F.3d at 1060, which held, based on the canon of constitutional avoidance, that § 1226(c) required periodic bond hearings every six months. *Jennings*, 138 S.Ct. at 836. According to the Supreme Court, this was an "implausible" construction of the statute. *Id.* The Supreme Court explained:

> [Section] 1226(c) does not on its face limit the length of the detention it authorizes. In fact, by allowing [noncitizens] to be released "only if" the Attorney General decides that certain conditions are met, § 1226(c) reinforces the conclusion that [noncitizens] detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute. And together with § 1226(a), § 1226(c) makes clear that detention of [noncitizens] within its scope must continue "pending a decision on whether the [noncitizen] is to be removed from the United States." § 1226(a).

*Id.* at 846. The Supreme Court went on to reject the argument "that § 1226(c)'s 'silence' as to the length of detention 'cannot be construed to authorize prolonged mandatory detention . . . ,'" reasoning that "§ 1226(c) is *not* 'silent' as to the length of detention. It mandates detention 'pending a decision on whether the [noncitizen] is to be removed from the United States,' § 1226(a), and it expressly prohibits release from that detention except for narrow, witness-protection purposes." *Id.* (emphasis in original); *see also id.* at 847 ("Under § 1226(c), the

1 Government must detain [a noncitizen] until 'a decision on *whether* the [noncitizen] is to be removed' is made.") (quoting § 1226(a), emphasis in *Jennings*). To bolster this conclusion, the Supreme Court noted its prior holding in *Demore* that § 1226(c)'s "definite termination point" is the "conclusion of removal proceedings," which "marks the end of the Government's detention authority under § 1226(c)." *Id.* at 846 (citing *Demore* 538 U.S. at 529). The Supreme Court also rejected the argument that "§ 1226(c)'s limited authorization for release for witness-protection purposes does not imply that other forms of release are forbidden," relying on the plain language of the statute to conclude "that the covered [noncitizens] may be released 'only if' certain conditions are met . . . ." *Id.* at 847 (quoting § 1226(c)(2)). Ultimately, the Supreme Court held "that § 1226(c) mandates detention of any [noncitizen] falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the [noncitizen] is released for witness-protection purposes." *Id.*

Honorable Michelle L. Peterson, Magistrate Judge, recently provided the following analysis of the interplay between *Jennings* and *Casas-Castrillon*, ultimately concluding that the two are clearly irreconcilable:

> *Jennings* and *Casas-Castrillon* both address the length of detention permitted by § 1226(c). Both courts conclude that § 1226(c) detention ends at the "conclusion of removal proceedings." *Jennings*, 138 S.Ct. at 846; *see Casas-Castrillon*, 535 F.3d at 948 (identifying the "conclusion of proceedings"). The courts, however, define this point differently. Under *Jennings*, removal proceedings conclude when the "'decision on whether the [noncitizen] is to be removed' is made." 138 S.Ct. at 847 (quoting § 1226(a)); *see also id.* at 846 ("[T]ogether with § 1226(a), § 1226(c) makes clear that detention of [noncitizens] within its scope must continue 'pending a decision on whether the [noncitizen] is to be removed from the United States.'") (quoting § 1226(a)); *id.* (§ 1226(c) "mandates detention 'pending a decision on whether the [noncitizen] is to be removed from the United States'") (quoting § 1226(a)). This includes the petition for review process when the court of appeals grants a stay of removal. *Prieto-Romero*, 534 F.3d at 1062. As is apparent from *Jennings*'s repeated references to § 1226(a), the Supreme Court views the length of detention permitted by § 1226(c) to be the same as that permitted by § 1226(a). The

REPORT AND RECOMMENDATION - 8

only difference between the provisions is that § 1226(a) detention is discretionary, while § 1226(c) detention is mandatory.

*Casas-Castrillon* identifies a different point at which removal proceedings end—the dismissal of the noncitizen's appeal by the BIA. 535 F.3d at 948 ("Once Casas' proceedings before the BIA were complete, the Attorney General's authority to detain him under § 1226(c) ended . . . ."). The Ninth Circuit recognized that § 1226(a) authorizes detention "pending a decision on whether the [noncitizen] is to be removed from the United States," which includes the petition for review process, but the court did not use this as the yardstick by which to measure § 1226(c) detention. *See id.*

When a noncitizen does not file a petition for review, the BIA's decision is also the decision on whether the noncitizen is to be removed. But in every case where the noncitizen files a petition for review and obtains a stay of removal, the BIA's decision and the decision on whether the noncitizen is to be removed are not synonymous and are often decided years apart. The Supreme Court in *Jennings* held that § 1226(c) detention is mandated until the "decision on whether the [noncitizen] is to be removed from the United States" is made, 138 S.Ct. at 846-47 (quoting § 1226(a)), which the Ninth Circuit has held includes judicial review of a removal order when removal is stayed, *Prieto-Romero*, 534 F.3d at 1062. *Casas-Castrillon* reached a different conclusion regarding when § 1226(c) detention ends. This Court thus concludes that the Ninth Circuit's holding in *Casas-Castrillon* that § 1226(c) detention ends with the BIA's decision is clearly irreconcilable with the Supreme Court's holding in *Jennings* that § 1226(c) mandates detention pending a decision on whether the noncitizen is to be removed from the United States, which, under *Prieto-Romero*, includes the decision on any petition for review.

*Muhamd*, Dkt. 8 at 8-10. The Court agrees with and adopts Judge Peterson's reasoning in full.

The Court also agrees with Judge Peterson's reasons for declining to follow the decisions concluding that *Casas-Castrillon* remains good law. *Avilez* focused on the statement in *Jennings* that "together with § 1226(a), § 1226(c) makes clear that detention of [noncitizens] within its scope *must* continue 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Jennings*, 138 S.Ct. at 846 (quoting 8 U.S.C. § 1226(a), emphasis in *Jennings*). The *Avilez* court explained,

One could reasonably interpret the language "together with § 1226(a), § 1226(c)" to mean that the two statutory sections work together to ensure that a noncitizen remains in custody pending judicial review of a final order of removal, because § 1226(c) applies before the order of removal becomes final, and § 1226(a) applies

REPORT AND RECOMMENDATION - 9

after the order of removal becomes final. *See id.* This interpretation is consistent with the holding in *Casas*. *See* 535 F.3d at 948.

*Avilez*, 2020 WL 1704456 at *3; *see also Birru*, 2020 WL 1905581, at *8 (adopting reasoning in *Avilez*); *Singh*, 2020 WL 1929366, at *6 -7 (same). As Judge Peterson explained:

> This reasoning, however, fails to take into account that § 1226(c) detention is mandatory—as the Supreme Court emphasized—while § 1226(a) detention is not. As discussed above, the Supreme Court in *Jennings* clearly established that § 1226(c) mandates detention until there is a decision on whether the noncitizen is to be removed from the United States. Under *Casas-Castrillon*, however, some § 1226(c) detainees become subject to § 1226(a) *before* a decision has been made on whether they are to be removed. Thus, even though a decision has not been made as to whether they are to be removed, they are no longer subject to mandatory detention, as required by *Jennings*. Given that *Casas-Castrillon* requires discretionary detention when *Jennings* requires mandatory detention, *Casas-Castrillon* cannot be applied without "running afoul" of *Jennings*. *Lair*, 697 F.3d at 1207.

*Muhamd*, Dkt. 8 at 10-11.

The court in *Birru* offered one other reason why *Casas-Castrillon* and *Jennings* are reconcilable, explaining:

> [T]he United States Supreme Court [in *Jennings*] repeatedly emphasized that 28 U.S.C. § 1226(c) mandates detention only as to "[noncitizens] *within its scope*." 138 S.Ct. at 846 (emphasis added); *see also id.* at 847 ("We hold that § 1226(c) mandates detention of any [noncitizen] falling *within its scope* and that detention may end prior to the conclusion of removal proceedings 'only if' the [noncitizen] is released for witness-protection purposes." (emphasis added)). The *Casas-Castrillon* court held that petitioners who are subject to a final removal order and then seek judicial review of that removal order are no longer within the scope of 28 U.S.C. § 1226(c). *See Casas-Castrillon*, 535 F.3d at 951 ("[Section] 1226(c) does not authorize prolonged mandatory detention after [a noncitizen's] administrative proceedings are complete. Rather, these [noncitizens] are detained under the Attorney General's broader grant of discretionary authority under § 1226(a)."). The United States Supreme Court said nothing about that conclusion. Thus, *Casas-Castrillon* and *Jennings* can be readily harmonized insofar as: (1) *Casas-Castrillon* narrowed the scope of noncitizens who are subject to detention under 8 U.S.C. § 1226(c); and (2) *Jennings* then explained the statutory consequences for the noncitizens who continue to fall within the scope of 8 U.S.C. § 1226(c).

REPORT AND RECOMMENDATION - 10

*Birru*, 2020 WL 1905581, at *7-8 (alterations added); *see also Singh*, 2020 WL 1929366, at *6-7 (adopting reasoning in *Birru*). Judge Peterson also declined to follow *Birru*, reasoning:

> This Court, however, reads *Jennings*'s reference to the "scope" of § 1226(c) to refer to the categories of noncitizens described in § 1226(c)(1), as opposed to those detained under § 1226(a). Regardless, to the extent *Casas-Castrillon* can be characterized as narrowing the "scope" of who is detained under § 1226(c), it did so by shortening the duration of detention authorized by the statute. As explained above, the way in which it did so—by holding that the government's § 1226(c) detention authority terminates when the BIA issues its decision—is clearly irreconcilable with *Jennings*.

*Muhamd*, Dkt. 8 at 11-12. This Court concurs with Judge Peterson.

Because the Court concludes that Petitioner's detention is governed by § 1226(c), he is subject to mandatory detention until his removal proceedings have concluded, which includes a final ruling on his pending petition for review. The Court does not know of any authority that permits federal courts to order the release of § 1226(c) detainees, and therefore recommends that Petitioner's request for release be denied.

B.      Due Process Does Not Require Another Bond Hearing at this Time

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a due process challenge to § 1226(c). The Supreme Court explained that Congress drafted § 1226(c) to respond to the high rates of crime and flight by removable noncitizens convicted of certain crimes and held that "the Government may constitutionally detain deportable [noncitizens] during the limited period necessary for their removal proceedings." *Id.* at 518-21, 526. In so holding, the Supreme Court stressed the "brief" nature of the mandatory detention under § 1226(c), which has "a definite termination point" that, in the vast majority of cases, results in detention of less than about five months. *Id.* at 529-30. Justice Kennedy's concurring opinion, which created the majority, reasoned that under the Due Process Clause, a noncitizen could be entitled to "an individualized

REPORT AND RECOMMENDATION - 11

determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532.

The Government relies on *Demore* to argue that Petitioner's mandatory detention comports with due process. (*See* Dkt. 10 at 11-13.) *Demore*, however, did not address the constitutionality of prolonged, mandatory detention. Nor did *Jennings*, instead remanding to the Ninth Circuit to address the constitutional issue in the first instance. 138 S.Ct. at 851-52. The Ninth Circuit in turn remanded to the district court. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 255 (9th Cir. 2018). In doing so, the Ninth Circuit expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Id.* at 256. Petitioner has been detained for approximately 45 months, an exceedingly long time. Given that *Demore* did not consider such a prolonged detention, the Court finds that the case does not resolve Petitioner's constitutional challenge.

The Government next argues that under the traditional balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), the facts of this case weigh against finding Petitioner is entitled to another bond hearing. (Dkt. 10 at 13-17.) To determine whether the procedures provided are constitutionally sufficient, *Mathews* requires courts consider three distinct factors: (1) the private interest at stake; (2) the government's interest, including the function involved and the fiscal and administrative burdens that any additional procedural requirements would entail; and (3) the risk of an erroneous deprivation of the private interest at stake through the procedures used, and the probable value, if any, of additional procedural safeguards. 424 U.S. at 335.

"The law post-*Jennings* regarding when and whether repeated bond hearings are required is quite unsettled." *Yagao v. Figueroa*, No. 17-2224, 2019 WL 1429582, at *2 (S.D. Cal. Mar. 26,

2019). In this district, judges generally have declined to apply *Mathews* when a noncitizen who is subject to prolonged mandatory detention has never had a bond hearing, instead favoring a multi-factor test adopted by a majority of district courts around the country. *See, e.g.*, *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1106-07 (W.D. Wash. 2019) (addressing mandatory detention under § 1225(b)(1)); *Djelassi*, 434 F.Supp.3d at 920-21 (same); *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *6-9, *8 n.8 (W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 596285 (W.D. Wash. Nov. 13, 2019) (addressing mandatory detention under § 1226(c)); *but see Mitka v. ICE Field Office Director*, No. 19-193, 2019 WL 5892025, at *2-4 (W.D. Wash. Nov. 12, 2019) (analyzing constitutionality of detention under both *Banda* and *Mathews* and declining to decide which test applies). For § 1226(c) detainees, those factors are: (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.[2] *Martinez*, 2019 WL 5968089, at *9.

Petitioner has already had two bond hearings at which the IJ found that the government presented clear and convincing evidence to justify his detention. The Government thus argues that the multi-factor test does not apply, and the Court should employ the *Mathews* test. (Dkt. 10 at 13 n.5.) Petitioner, in contrast, advocates for the multi-factor test. (*See* Dkt. 13 at 1-2 (citing cases that adopt a multi-factor test); Dkt. 14 at 8-10.) The Court concludes that the *Mathews* test is appropriate under the circumstances of this case. Because Petitioner has already received a bond

---

[2] The *Banda* test applies to arriving noncitizens and is the same as the *Martinez* test except it does not include the third and fourth *Martinez* factors, which address criminal history.

REPORT AND RECOMMENDATION - 13

hearing, the question before the Court is whether that review was sufficient to satisfy the due process requirements for prolonged, pre-removal order detention; the Court is not considering prolonged detention that has never been reviewed by an IJ. As *Banda* explained, "Courts apply the *Mathews* test to resolve the question of 'whether the administrative procedures provided . . . are constitutionally sufficient.' Thus, the *Mathews* test balances the benefits or burdens of 'additional or substitute procedural safeguards.'" 385 F.Supp.3d at 1006 (quoting *Mathews*, 424 U.S. at 334-35, internal citation omitted). This is precisely the task before the Court here. Indeed, judges in this district have applied *Mathews* to determine whether due process requires subsequent bond hearings for noncitizens subject to discretionary detention under § 1226(a). *See, e.g.*, *Viramontes-Gomez v. Nielsen*, No. 18-935, 2018 WL 6111015, at *4 (W.D. Wash. Oct. 18, 2018), *R. & R. adopted*, 2018 WL 6107293 (W.D. Wash. Nov. 21, 2018). In contrast, the multi-factor test is designed to "resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Id.* at 1106-07; *see also Reid v. Donelan*, 819 F.3d 486, 500-01 (1st Cir. 2016), *vacated in light of Jennings*, 2018 WL 4000993 (1st Cir. May 11, 2018) (adopting multi-factor test to assess the "reasonableness of *categorical* detention" (emphasis added)).

Given that an IJ has already reviewed Petitioner's detention and Petitioner now seeks a new bond hearing, the Court will apply the *Mathews* test.[3] As explained above, the *Mathews* test determines whether the provided procedures are constitutionally adequate by weighing the private

---

[3] Outside this district, some judges have applied *Mathews* to requests for subsequent bond hearings by § 1226(c) detainees, while others have adopted a multi-factor test or declined to decide which test applies. *See, e.g.*, *Sahota v. Allen*, No. 20-3180, 2020 WL 2992872, at *6 (N.D. Cal. June 4, 2020) (applying *Mathews*); *Vallejo v. Decker*, No. 18-5649, 2018 WL 3738947 *3 (S.D.N.Y. Aug. 7, 2018) (applying multi-factor test similar to that adopted in *Banda* and *Martinez*); *Zagal-Alcaraz v. ICE Field Office Director*, No. 19-1358, 2020 WL 1862254, at *4 (D. Or. Mar. 25, 2020), *R. & R. adopted*, 2020 WL 1855189 (D. Or. Apr. 13, 2020) (because the law is unsettled, applying both the *Martinez* multi-factor test and *Mathews*).

REPORT AND RECOMMENDATION - 14

interest at stake, the government's interest, and the risk of an erroneous deprivation of liberty and the value of additional safeguards.

      1.     *Private Interest*

"As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (addressing § 1226(a) detainees); *see also Zagal-Alcaraz*, 2020 WL 1862254, at *6 ("Detainees challenging Section 1226(c) mandatory detention 'undoubtedly [have] a strong liberty interest to be free from arbitrary or unreasonable imprisonment.'") (quoted source omitted). Petitioner has been detained for approximately 45 months, and it has been approximately 31 months since his last bond hearing. "There should be no reasonable dispute that Petitioner has a strong liberty interest to be free from prolonged detention without a hearing." *Zagal-Alcaraz*, 2020 WL 1862254, at *6. The Court concludes that this factor weighs heavily in Petitioner's favor.

The Government nevertheless argues that Petitioner's liberty interest is weaker than that of noncitizens subject to other detention authority because he belongs to a class of noncitizens for whom flight risk and danger to the community are statutorily presumed. (Dkt. 10 at 14.) The Court is not persuaded that Petitioner's status as a § 1226(c) detainee meaningfully affects his liberty interest in comparison with other noncitizens. While the Ninth Circuit has acknowledged that detainees at different stages in the removal process may have different levels of interest in freedom from detention, it has rejected the government's efforts to meaningfully distinguish between the liberty interests of detainees subject to post-removal order detention (who arguably have a lesser interest than those detained during removal proceedings), and § 1226(a) detainees: "Regardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged

detention." *Diouf v. Napolitano*, 634 F.3d 1081, 1087 (9th Cir. 2011). Although *Diouf* did not directly address § 1226(c), the court's refusal to accord post-removal order detainees a lesser liberty interest than those detained under § 1226(a) strongly suggests § 1226(c) detainees' liberty interest should not be discounted either. Indeed, district courts applying the *Mathews* factors regularly recognize that § 1226(c) detainees have a strong private interest. *See, e.g.*, *Zagal-Alcaraz*, 2020 WL 1862254, at *6.

The Government also argues that Petitioner has a lesser liberty interest because the length of detention is a result of a change in the law and his litigation strategies. (Dkt. 10 at 14-15.) There is no evidence, however, that Petitioner has engaged in dilatory tactics, and his good faith use of the processes afforded to him does not weigh against him assessing whether another bond hearing is required. *See, e.g.*, *Hechavarria v. Sessions*, 891 F.3d 49, 56 n.6 (2d Cir. 2018); *Liban M.J. v. Sec. of DHS*, 367 F.Supp.3d 959, 965 (D. Minn. 2019); *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018).

    2.    *Government's Interest*

The Government argues that it has a strong interest in upholding § 1226(c)'s statutory framework of mandatory detention for noncitizens whom Congress has deemed pose a flight risk or danger to the community based on their offenses. (Dkt. 10 at 15-16.) The Government also argues that it has a particularly strong interest because Petitioner has been convicted of serious felonies. (*Id.*) The Court agrees that the Government has an interest in enforcing the statute and detaining noncitizens who pose a danger to the community. However, as other courts have recognized, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz*, 2020 WL 1862254, at *7 (collecting cases). Given "the minimal cost of conducting a bond hearing, and the

ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." *Id.* (quoting *Lopez Reyes v. Bonnar*, 362 F.Supp.3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government's interest is important, it is not as significant as Petitioner's interest.

      3.    *Risk of Erroneous Deprivation/Value of Additional Safeguards*

Because Petitioner has already received two *Rodriguez* bond hearings and an opportunity to appeal, the Court finds that the risk of an erroneous deprivation of his liberty interest and the value of additional procedures is very low unless he can demonstrate a material change in circumstances since his last bond hearing.[4] Petitioner points to the following: the law has changed since his last bond hearing, and he is no longer considered an aggravated felon; he spent two years of his immigration detention housed in a prison, not a detention center, and thus was unable to gather the proper evidence to show the IJ that he is not a danger to the community; and while he was serving his criminal sentence, he participated in Narcotics Anonymous, earned his GED, and learned welding skills to use upon his release. (Dkt. 13 at 1-2.) The Court finds that these facts do not establish a material change in circumstances. While the change in the law affected the classification of his crime for purposes of immigration law, it did not change the criminal acts he committed that formed the basis for the IJ's dangerousness finding. In addition, Petitioner would have had an opportunity to present evidence of his positive activities while in prison to the IJ at his previous bond hearings, and he does not explain what evidence he was unable to submit at these hearings. Because Petitioner has already received two *Rodriguez* bond hearings and has not

---

[4] The Government argues that the Court need not weigh the third *Mathews* factor because Congress has already determined that Petitioner is among a class of individuals who are sufficiently dangerous that detention should be mandatory. (Dkt. 10 at 15-16.) The Government does not cite any authority resolving the third *Mathews* factor on this basis, and the Court declines to abdicate its responsibility to consider all three *Mathews* factors.

shown a material change in circumstances, the Court concludes that the third *Mathews* factor weighs in favor of the Government.

### i. *Weighing the Factors*

On balance, the *Mathews* factors weigh in favor of finding that Petitioner's detention comports with due process. Although a significant amount of time has passed since Petitioner's last bond hearing, he has not shown a material change in circumstances that would warrant a new bond hearing at this time.

## IV. CONCLUSION

The Court recommends that the Government's motion to dismiss (Dkt. 10) be GRANTED, Petitioner's habeas petition (Dkt. 6) be DENIED, and this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 23, 2020**.

Dated this 28th day of September, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18